**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WILLIAM WHITE,

    Plaintiff,

v.                                          Case No. 05-CV-72741-DT

AMERICAN AXLE & MANUFACTURING, INC.,

    Defendant.

                                       /

**ORDER GRANTING DEFENDANT AMERICAN AXLE & MANUFACTURING, INC.'S
"MOTION TO DISMISS DISPARATE IMPACT CLAIMS"**

Pending before the court is Defendant American Axle & Manufacturing Inc.'s ("AAM's") "Motion to Dismiss Disparate Impact Claims." The motion has been fully briefed and the court held a hearing on the motion on November 23, 2005. For the reasons stated below, the court will grant Defendant's motion.

**I. BACKGROUND**

Before the termination of his employment in February 2004, Plaintiff William White had worked for General Motors ("GM") and AAM in various capacities since 1978. (Compl. at ¶¶ 14-23.) Plaintiff began his career at GM's Chevrolet plant in Flint, Michigan before being promoted and transferred to the Saturn factory in Spring Hill, Tennessee where he was employed until October of 1992. (*Id.* at ¶¶ 14-16.) In October of 1992, he was transferred to GM's Detroit Gear & Axle Plant, located in Detroit, Michigan. (*Id.* at ¶ 17.) In 1994, GM sold Detroit Gear & Axle to AAM, who retained Plaintiff as an employee. (*Id.* at ¶ 23.)

In May of 1996, AAM promoted Laura Lane, a younger Caucasian female to be Plaintiff's supervisor and she worked in that capacity until she left her position in 1998. (*Id.* ¶¶ 24-27.)

In May of 2001, Plaintiff and Lynn Socha, a thirty-two or thirty-three year old Caucasian female and a fellow AAM employee, both took and passed a five day ISO 14001 Lead Auditor certification course. (*Id.* at ¶¶ 29-30.) In October of 2001, AAM promoted Ms. Socha to be Plaintiff's supervisor. (*Id.* at ¶¶ 31, 35.) Plaintiff asserts that "while [Ms. Socha] was Plaintiff's supervisor, she repeatedly made comments to Plaintiff . . . and others to the effect that companies have a tendency to lay off the older workers so that the company can hire a younger employee and avoid long-term retirement obligations." (*Id.* at ¶ 34.) AAM later ordered Plaintiff to train Ms. Socha as an environmental engineer. (*Id.* at ¶¶ 37, 39.)

After Detroit Forge and Detroit Gear & Axle split, AAM hired Shan Mirza, a thirty-three or thirty-four year old Iraqi-American male for the position of Senior Environmental Engineer at Detroit Forge. (*Id.* at ¶ 40.) Plaintiff was assigned to train Mr. Mirza. (*Id.* at ¶ 41.)

In February 2004, AAM initiated a series of layoffs, and Plaintiff was among those laid off. (*Id.* at ¶¶ 45-46.) Plaintiff claims that AAM laid off far more employees who were older and African-American than younger and non-minority employees. (*Id.* at ¶ 47.) More specifically, he claims that in AAM's layoffs in February 2004, 80% of the employees released from the Detroit Gear & Axle facility were forty-years old or older, 38% of the employees released from the Buffalo Gear facility were forty-years old or older, 80% of those employees to be released from the Tonawanda Force Facility were

forty years old or older, and 100% of those employees to be released from the Three Rivers facility were forty years old or older. (*Id.* at ¶¶ 48-51.) Plaintiff claims that the stress caused by his layoff led to his severe depression, aggravated a spine and lower back injury he suffered while employed by AAM, and negatively affected his ability to sleep, eat, and manage his diabetes. (*Id.* at ¶¶ 52-54.)

On July 12, 2005, Plaintiff filed a ten-count complaint that included claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 ("ELCRA"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"). (*See* Pl.'s Compl.) In its "Motion to Dismiss Disparate Impact Claims," Defendant is seeking a dismissal of counts I, II, V, VII, and IX of Plaintiff's Complaint. (Def.'s Mot. at 8.)

## II.  STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Kline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995). A motion to dismiss may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Pratt v. Ventas, Inc.,* 365 F.3d 514, 519 (6th Cir. 2004) (internal quotation marks and citation omitted). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Columbia Natural Res., Inc. v. Tatum*, 58

3

F.3d 1101, 1109 (6th Cir. 1995); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Wright*, 58 F.3d at 1138; *Columbia Natural Resources, Inc.*, 58 F.3d at 1109.

Though decidedly liberal, this standard of review does require more than the bare assertion of legal conclusions.  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1100-01 (6th Cir. 1995).  The complaint must give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994); *Johnson v. City of Detroit*, 319 F. Supp. 2d 756, 759-60 (E.D. Mich. 2004).

"In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'"  *Lillard*, 76 F.3d at 726 (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).  "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account."  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

### III.  DISCUSSION

**A.  Racial Discrimination (Disparate Impact) In Violation of the 1964 Civil Rights Act, Title VII, 42 U.S.C. §§ 2000e et seq. (Count I)**

4

In its "Motion to Dismiss . . .," Defendant argues that "Plaintiff's disparate impact claims must be dismissed because he fails to allege facts sufficient to meet an . . . element of a claim of disparate impact discrimination, which is that AAM applied a facially-neutral policy, test, or procedure that resulted in a statistically significant disparate impact on Plaintiff's protected class and that application of that policy resulted in an adverse employment action against Plaintiff."  (Def.'s Mot. at 4.)  Defendant further contends that Plaintiff's complaint "is completely devoid of any allegation identifying a facially neutral policy, which had a disparate impact on African-Americans or older employees.  (*Id.* at 5.)  In support of its position, Defendant quotes language from an unpublished Sixth Circuit case, *Johnson v. Derwinski*, No. 91-3898, 1993 WL 8147 (6th Cir. Jan. 15, 1993), which held that the district court below had properly granted summary judgment on the plaintiff's claim because the plaintiff failed to establish a prima facie case of disparate impact discrimination by not only failing to provide statistical evidence demonstrating causation, but also by failing to identify the specific employment practice she was challenging.  *Id.* at *3.

In response, Plaintiff argues that "the layoff's situation's decision-making process is invisible or at least much less visible. . . . [T]he only visible specific practice available for challenge is the overall layoff decision itself. . . .  Thus, the information needed to isolate and specify challenged practices in layoff situations is invisible or at least much less visible."  (Pl.'s Resp. at 8.)

Title VII proscribes employment practices that are "fair in form but discriminatory in operation."  *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).  "[D]isparate impact

5

analysis is intended to make sure that employers do not use 'neutral' decision-making mechanisms that in fact work to eliminate a greater portion of otherwise-qualified protected group members than they do members of other groups." *Phillips v. Cohen*, 400 F.3d 388, 397 (6th Cir. 2005). "1991 amendments to Title VII superseded portions of *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 651 (1989), and *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988), which held that a plaintiff in a disparate impact case must show the discriminatory effect of specific practices on protected group members." *Id.* The amendments provide that if the plaintiff demonstrates that "the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one practice." 42 U.S.C. § 2000e-2(k)(1)(B)(i).

In the instant case, Plaintiff merely describes race and age related statistical disparities between people that were employed by Defendant in relation to Defendant's implementation of layoffs at its facilities.

In two unreported but instructive cases, very similar circumstances prevailed. First, in *Mongo v. Home Depot, Inc.,* No. 3:02-CV-2593 R, 2003 WL 22227864 (N.D. Tex. Sept. 26, 2003), the court held that a plaintiff who alleged that he "was 'subjected to facially neutral employment practices that created . . . statistical disparities disadvantaging African-American [employees]'" had "failed to identify any facially neutral policy or practice that resulted in any disparate impact." *Id.* at *2. The *Mongo* court held that while the plaintiff "is not required to plead every element of his claim to survive a Rule 12(b)(6) dismissal, he must plead more than mere conclusory allegations against [the defendant]." *Id.* at *2. Second, in *Kulkarni v. City University of New York,* No. 01

CIV. 10628 (DLC), 2002 WL 1315596 (S.D.N.Y. June 14, 2002), the court stated that "the plaintiff [who was alleging disparate impact discrimination] cited *Swierkiewicz v. Sorema N.A.*, 122 S.Ct. 992 (2002), for the proposition that he need not be more specific in his pleadings" since he could not "[a]t [that] stage . . . identify narrower policies." *Id.* at *2. In addressing Plaintiff's argument, the court stated that "*Swierkiewicz* does not, however, relieve plaintiff of the obligation to identify in his pleadings a specific employment practice that is the cause of the disparate impact. Plaintiff must identify a specific employment practice to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* at *2 (internal citations omitted).

In the instant case, Plaintiff has not identified any of Defendant's employment policies that are allegedly responsible for the statistical disparities that Plaintiff has described. Plaintiff's allegation is not sufficient to establish a disparate impact claim, even under the flexibility accorded plaintiffs by the 1991 Amendments. Therefore, the court will dismiss without prejudice Defendant's disparate impact claims pled under Title VII.[1]

### B. Racial Discrimination (Disparate Impact) in Violation of the 1870 Civil Rights Act, 42 U.S.C. § 1981 (Count II)

Defendant argues that Plaintiff's claim of "disparate impact under 42 U.S.C. § 1981 fails to state a claim upon which relief can be granted for the additional reason that

---

[1] As the court stated during the hearing, if evidence is revealed during the course of discovery that is sufficient to allow Plaintiff to reinstitute his disparate impact claims under Title VII, Plaintiff may present to the court a motion making such a request.

a 42 U.S.C. § 1981 violation requires a finding of intentional discrimination." (Def.'s Mot. at 6.)

Title 42 U.S.C. § 1981 permits only one type of disparate impact claim: a disparate impact claim where the disparate impact is traceable to a discriminatory purpose. *Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391-96 (1982). Indeed, the Court held that "official action will not be held unconstitutional solely because it results in a racially disproportionate impact." *Id.* at 390. Therefore, in order for Plaintiff's disparate impact claim under 42 U.S.C. § 1981 to be tenable, Plaintiff must allege intentional discrimination on the part of Defendant. *Id.* Here, Plaintiff has not alleged in his complaint that Defendant purposefully discriminated against him and does not meet the § 1981 requirement. The court, therefore, will dismiss without prejudice Count II of his complaint.[2]

### C. Disparate Impact Claims Filed under The ELCRA and The ADEA (Counts V, VII, and IX)
#### 1. The ELCRA

Defendant argues that Plaintiff's claims filed under the ELCRA should be dismissed for Plaintiff's failure to identify a facially neutral policy that AAM utilized in making its employment decisions.

> To establish a prima facie case of disparate impact discrimination under the ELCRA, a plaintiff must show that she was a member of a protected class and that "a facially neutral employment practice burden[ed] a protected class of persons more harshly than others." *Roberson v.*

---

[2]As the court stated during the hearing, if evidence is revealed, relating to Defendant having intentionally discriminated against Plaintiff, during the course of discovery that is sufficient enough to allow Plaintiff to reinstitute his disparate impact claims under U.S.C. § 1981, Plaintiff may present a motion to the court making such a request.

> *Occupational Health Centers of America, Inc*, 220 Mich. App. 322, 329-330; 559 N.W.2d 86 (1996), quoting *Reisman v. Regents of Wayne State Univ.*, 188 Mich. App. 526, 538-539 (1991).  Proof of discriminatory motive is not required.  *Dep't of Civil Rights ex rel Peterson v. Brighton Area Schools*, 171 Mich. App. 428, 438; 431 N.W.2d 65 (1988), quoting *Smith v. Consolidated Rail Corp*, 168 Mich. App. 773, 776; 425 N.W.2d 220 (1988).  However, "a completely neutral practice will always have a disparate impact on some group, and discrimination need not always be inferred from such consequences."  *Smith*, supra, quoting *Farmington Educ. Ass'n v. Farmington School Dist*, 133 Mich. App 566, 575; 351 N.W.2d 242 (1984).

*Weberg v. State*, 2001 WL 788492, at *6 (Mich Ct. App. Jan. 12, 2001).

Relating to his race-based and age-based ELCRA claims, Plaintiff argues in his complaint that:

> Defendant . . . did not release the most similarly situated non-protected group employees.  Instead, Defendant . . . retained the most similarly situated non-protected group employees.  These procedures resulted in a statistically significant larger percentage of layoffs of African-American [and over age 40] employees than of non-protected group employees.

(Pl.'s Compl. at ¶¶ 98-100; 131-34)  As stated above, Plaintiff has not identified a "facially neutral employment practice" engaged by Defendant that resulted in the statistical disparities described by Plaintiff, as required by the ELCRA.  *Roberson*, 559 N.W.2d at 89.  Therefore, the court will dismiss without prejudice Plaintiff's ELCRA claims.[3]

---

[3]As the court stated during the hearing, if evidence is revealed during the course of discovery that is sufficient enough to allow Plaintiff to reinstitute his disparate impact claims under the ELCRA, Plaintiff may present a motion to the court making such a request.

## 2.  The ADEA

Defendant argues that Plaintiff's age discrimination claim filed under the ADEA should be dismissed for Plaintiff's failure to identify a facially neutral policy that caused a disparate impact.  The United States Supreme Court has held that the 1991 Amendments referenced above impacted only Title VII, not the ADEA.  More specifically, the *Smith v. City of Jackson*, 125 S. Ct. 1536 (2005) court recently held that:

> Two textual differences between the ADEA and Title VII make it clear that even though both statutes authorize recovery on a disparate-impact theory, the scope of disparate-impact liability under ADEA is narrower than under Title VII. . . . While the relevant 1991 amendments expanded the coverage of Title VII, they did not amend the ADEA or speak to the subject of age discrimination.  Hence, *Wards Cove's* pre-1991 interpretation of Title VII's identical language remains applicable to the ADEA.
> 
> ***
> 
> Turning to the case before us, we initially note that petitioners have done little more than point out that the pay plan at issue is relatively less generous to older workers than to younger workers.  They have not identified any specific test, requirement, or practice within the pay plan that has an adverse impact on older workers.  As we held in *Wards Cove*, it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact.  Rather, the employee is "'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'"  490 U.S. at 656, 109 S.Ct. 2115 (emphasis added) (quoting *Watson*, 487 U.S., at 994, 108 S.Ct. 2777). Petitioners have failed to do so.  Their failure to identify the specific practice being challenged is the sort of omission that could "result in employers being potentially liable for 'the myriad of innocent causes that may lead to statistical imbalances . . . .'"  490 U.S. at 657, 109 S. Ct. 2115.  In this case not only did petitioners thus err by failing to identify the relevant practice, but it is also clear from the record that the City's plan was based on reasonable factors other than age.

*Id.* at 1545.

Plaintiff claims that "Defendant's . . . procedures for selecting employees for layoff, and the layoffs themselves, had a disparate impact on over age 40 employees."

(Pl.'s Compl. at ¶¶ 116-17.)  Plaintiff's complaint, however, does not identify what facially neutral policy allegedly followed by AAM had a disparate impact on older people. Instead, Plaintiff's complaint merely provides statistics alleging a number of older people who were laid off by AAM and makes no reference to any policy or practice allegedly engaged by AAM that led to these disparities.  Therefore, the court will dismiss without prejudice Plaintiff's disparate impact claims pled under Title VII.[4]

### D.  Sanctions

Defendant argues that "Plaintiff and/or his attorney should be required to pay AAM's costs and attorney's fees incurred in defending against these groundless, unreasonable[,] and vexatious claims."  (Def.'s Mot. at 7.)

The *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) Court held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  *Id*.  In addition, under 28 U.S.C. § 1927,

> Sanctions . . . are warranted "when an attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'"  *Holmes v. City of Massillon, Ohio,* 78 F.3d 1041, 1049 (6th Cir.) (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir.1987)).  "An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to carte blanche to burden the federal courts by pursuing claims that are frivolous on the merits. . . . Accordingly . . . when an attorney knows *or reasonably should know* that a

---

[4]  As the court stated during the hearing, if evidence is revealed during the course of discovery that is sufficient enough to allow Plaintiff to reinstitute his disparate impact claims under the ADEA, Plaintiff may present a motion to the court making such a request.

> claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney." *In re Ruben*, 825 F.2d at 984 (quoting *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir.1986)). Bad faith is not required to support a sanction under § 1927.

*Wilson-Simmons v. Lake County Sheriff's Dept.*, 207 F.3d 818, 823 (6th Cir. 2000) at 824 (emphasis supplied). The *Wilson-Simmon*s court also held that a "plaintiff should not be assessed his opponent's attorney fees unless the court finds the claim was groundless at the outset or 'that the plaintiff continued to litigate after it clearly became so.'" *Id.* (citation omitted). The court notes, however, that "attorneys' fees should be awarded to defense counsel in Title VII actions only in the most egregious circumstances." *Noyes v. Channel Prods.,* 935 F.2d 806, 810 (6th Cir. 1991). The court, however, does not find Plaintiff's action in framing his complaint in this way to be so egregious or vexatious so as to warrant sanctions.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion to Dismiss Disparate Impact Claims" [Dkt. # 3] is GRANTED.  Defendant's motion is granted with respect to Plaintiff's disparate impact claims (Counts I, II, V, VII, and IX), which are hereby DISMISSED WITHOUT PREJUDICE.

                                        S/Robert H. Cleland
                                        ROBERT H. CLELAND
                                        UNITED STATES DISTRICT JUDGE

Dated:  February 14, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 14, 2006, by electronic and/or ordinary mail.

                                       S/Lisa Wagner
                                       Case Manager and Deputy Clerk
                                       (313) 234-5522