**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WILLIAM WHITE,

      Plaintiff,

v.                                                          Case No. 05-CV-72741-DT

AMERICAN AXLE & MANUFACTURING, INC.,

      Defendant.

                                            /

**OPINION AND ORDER GRANTING DEFENDANT'S "MOTION FOR SUMMARY JUDGMENT" AND DENYING PLAINTIFF'S "MOTION TO AMEND COMPLAINT"**

Pending before the court is Defendant American Axle & Manufacturing, Inc.'s ("AAM's") July 13, 2006 "Motion for Summary Judgment" and Plaintiff William White's July 11, 2006 "Motion to Amend Complaint." The court has reviewed the briefing in this matter and heard argument on the motion during a September 27, 2006 hearing. For the reasons set forth below, the court will grant Defendant's motion for summary judgment and deny Plaintiff's motion to amend his complaint.

**I. BACKGROUND**

Plaintiff White, 52-year-old African American male,[1] was hired in 1978 by General Motors, the previous owner of Detroit Gear & Axle ("DGA"). (White Dep. at 12, Pl.'s Ex. 1.) He was promoted to Senior Environmental Engineer in 1992, and when General Motors sold the facility to AAM, White continued in this position. (*Id.* at 14-15.) In 1999,

---

[1] All ages are as of February 20, 2004, the day that White's employment was terminated.

AAM hired Lynn Socha, a 36-year-old Caucasian female, as a Safety Representative for the DGA.  (Socha Dep. at 15-16, Pl.'s Ex. 23.)

Both White and Socha became ISO 14001 Lead Auditor Certified in May of 2001. (Socha Dep. at 19, Pl.'s Ex. 23; White Dep. at 46, Pl.'s Ex. 2; ISO 14001 Cert. Docs., Pl.'s Ex. 24.)  Paul Breningstall and Plant Manager John Jerge created the Environmental Management Systems Coordinator position to develop, implement and oversee ISO 14000 compliance.[2] (Breningstall Aff. at ¶ 4-5, Def.'s Ex. 5.)  In 2001, Breningstall promoted Socha to that position and White began reporting to Socha.  (*Id.* at 11; Socha Dep. at 23-24, Pl.'s Ex. 23.)

In February of 2004, AAM implemented a Reduction in Force ("RIF") that affected multiple AAM plants, including the DGA.  (White Dep. at 66, Pl.'s Ex. 1; Novak Dep. at 27, Pl.'s Ex. 20.)  As a result, manager Terry Alphonse was informed that he needed to eliminate one position in  DGA's Central Maintenance and Engineering Department.  (Alphonse Aff. at ¶ 13.)  Alphonse was given complete discretion in determining who to fire, and there were no factors that he was required to consider in making that decision. (Alphonse Dep. at 53, Pl.'s Ex. 2.)  Alphonse concluded that the duties of the Senior Environmental Engineer, then held by White, could be combined with the Environmental Management System Coordinator position, then held by Socha.  (Alphonse Aff. at ¶ 15-17.)  Alphonse determined that ISO 14000 compliance was the department's main environmental compliance priority, and decided Socha was the ideal candidate for the combined position because she had developed, implemented and maintained the ISO

---

[2]  ISO 14000 and 14001 are part of the same program.  (Pl.'s Resp. at 7 (citing Socha Dep. at 32-33, Pl.'s Ex. 23).)

2

14000 compliance program since 2001. (*Id.* at ¶ 15, 28-20.) Therefore, Alphonse made the decision to eliminate the Senior Environmental Engineer position and lay off White. (*Id.* at ¶ 20.)

Alphone explained that Socha was chosen to take over the combined position both due to her experience with ISO 14000 and her excellent performance reviews. (Alphonse Dep. at 58, Pl.'s Ex. 2.) In contrast, White received discipline for unacceptable job performance in January 2003 for failing to write up a report for which he contends he did not have all the required information. (Discipline Memo., Def.'s Ex. 8.) As his supervisor, Socha also brought to White's attention other performance issues, including the fact that he was hard to reach, the timeliness of his payment of invoices, and his failure to tend to repairs at the water treatment plant. (Socha Dep. at 51, Pl.'s Ex. 23.) According to White, however, he was always available via radio, and any late invoices were delayed by other employees. (White Dep. at 48-49, Pl.'s Ex. 1.) Overall, Alphonse rated White's performance as average, and stated White was not in danger of losing his job prior to the RIF. (Alphonse Dep. at 73, Pl.'s Ex. 2.) On February 20, 2004, White was notified that he was selected to be laid off under the RIF. (White Dep. at 65, Pl.'s Ex. 1.)

On July 12, 2005, White filed a ten-count complaint that included claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Michigan-Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 ("ELCRA") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"). In its February 14, 2006 Order, the Court dismissed Plaintiff's disparate impact claims: Counts I, II, V, VII, and IX of the Complaint. Discovery concluded on June 15, 2006. Plaintiff filed his "Motion to Amend

3

Complaint" on July 11, 2006, three days before the dispositive motion cut-off date. Two days later, Defendant filed its "Motion for Summary Judgment."

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").

### B.  Direct Evidence

In examining whether material facts exist regarding a claim of disparate treatment, the court must determine whether Plaintiff has offered direct evidence of discrimination or circumstantial evidence that would allow an inference of discriminatory treatment.  *Anthony v. BTR Automotive Sealing Sys.*, 339 F.3d 506, 514 (6th Cir. 2003) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)).  The Sixth Circuit has described direct evidence as "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).  "Direct evidence of discrimination does not require a fact-finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."  *Id.* (citing *Nguyen v. City of Cleveland*, 229 F.3d. 559, 563 (6th Cir. 2000)).  Direct evidence usually requires an "unmistakable verbal assertion that the plaintiff was treated adversely because of his race."  *Paasewe v. Ohio Arts Counsel*, No. 02-3843, 2003 WL 22017539, *2 (6th Cir. Aug. 25, 2003) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998)).

Plaintiff argues that he has presented direct evidence demonstrating that he was laid off because of his race.  Plaintiff's only basis for his direct evidence claim arises from a conversation in September 2003 where White alleged asked why Alphonse had beer at work, and Alphonse replied that it "was a white boy thing, you wouldn't understand."  (White Dep. at 64, Pl.'s Ex. 1.)  Alphonse denies that this conversation

5

occurred; indeed, he avers that he has not even consumed alcohol since 1979. (Alphonse Affidavit at ¶ 8, Def.'s Ex. 4.) While this alleged incident does involve the decision-maker solely responsible for Plaintiff's termination, the court concludes as a matter of law that if is insufficient to *require* the conclusion that racial animus was a motivating factor in Alphonse's decision to discharge Plaintiff five months later. From this one inherently ambiguous reference to race,[3] a jury would have to infer not only that Alphonse was hostile towards Plaintiff because of his race, but also that his hostility bore some relationship to the decision to terminate Plaintiff's employment. Plaintiff's allegation, even taken as true, falls far short of an "*unmistakable*" assertion that he was selected to be laid off because of his race. *See Johnson*, 319 F.3d at 865. Therefore, the court finds that Plaintiff lacks direct evidence to support a finding of his direct disparate treatment claims. The court must now consider whether Plaintiff can establish a material issue of fact with circumstantial evidence.

### C. Circumstantial Evidence

To determine if Plaintiff has sufficient circumstantial evidence to overcome summary judgment, the court must examine his claims under the burden-shifting analytical framework established by the Supreme Court. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, Plaintiff has the initial burden of presenting a prima facie case of discrimination. The establishment of a prima facie case creates a rebuttable

---

[3] A mere reference to race does not equate to hostility. *See Springfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 561 ("The Supreme Court has held that 'simple teasing' or 'offhand comments,' and isolated incidents' do not amount to direct evidence of discrimination under Title VII.") (citations omitted).

6

presumption of discrimination and creates a burden of production for Defendant to articulate a legitimate non-discriminatory reason for taking the challenged action. Defendant's burden after a prima facie case is presented is only one of production, not persuasion; the ultimate burden of persuasion remains with Plaintiff. *Anthony*, 339 F.3d at 515. Once Defendant offers a legitimate non-discriminatory reason, Plaintiff bears the burden to prove that such reason is a pretext for discrimination.

### 1. Plaintiff's Prima Facie Case

There is no dispute that Plaintiff was laid off during Defendant's RIF. The Sixth Circuit has held that "a plaintiff whose employment position is eliminated in a corporate reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons." *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir. 1991). In an ordinary disparate treatment case, the plaintiff must demonstrate a prima facie case by satisfying the following elements: (1) he is a member of a protected class; (2) he was subject to an adverse employment decision; (3) he was qualified for his position; and (4) he was replaced by a person outside the protected class or that a similarly situated, non-protected person was treated more favorably. *See Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). However, in RIF cases, the fourth element requires the plaintiff to present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir. 1990). Because White does not dispute

that he was laid off during a RIF, the court will determine whether a genuine issue of fact exists in light of this higher burden.

The parties agree Plaintiff is afforded protection from discrimination based on race and age. Furthermore, Defendant does not claim Plaintiff was unqualified for his job[4] or that the layoff did not constitute an adverse employment action. The dispute in this case centers on the fourth prong of the prima facie case: whether AAM employees similarly situated in all relevant respects to Plaintiff, except for the protected characteristics, were treated more favorably, and whether Plaintiff can point to additional evidence to indicate this difference in treatment was due to discrimination on the basis of race or age.

The parties primarily dispute whether a reasonable jury could conclude that Plaintiff and Socha are similarly situated. In order to be comparable for purposes of a plaintiff's prima facie case, employees must be "similarly situated in all relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). In the disciplinary context, the Sixth Circuit described the analysis as follows:

> [T]o be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating

---

[4] In its motion, Defendant argues, and Plaintiff agrees, that Plaintiff is *currently* unable to perform the duties of an environmental engineer. However, Defendant fails to cite any authority to support its contention that the court should consider Plaintiff's subsequent physical limitations in evaluating Plaintiff's prima facie case. Because Defendant never contends Plaintiff was unqualified for his position at the time Plaintiff was laid off, the court finds Plaintiff has at least presented a triable issue of fact regarding the third element of his prima facie case.

8

>circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell*, 964 F.2d at 583. Because each case arises under different circumstances, the factors set forth in *Mitchell* are not dispositive and the court should make an "independent determination" of the factors relevant to each case. *See Ercegovich*, 154 F.3d at 352.

Plaintiff proffers only one employee who he claims satisfies the similarly situated requirement: Lynn Socha. Because Socha, a younger, white employee with less seniority, was retained and assumed most of his job duties after his layoff, Plaintiff contends he has presented evidence to satisfy the final element of his prima facie case. (Pl.'s Resp. at 21.) Defendant, however, submits two characteristics that it claims legitimately differentiates the two employees. First, Defendant points to Socha's four-year experience developing, implementing and managing the department's ISO 14000 compliance program. (Def.'s Mot. Br. at 16.) Plaintiff admits that "Lynn had responsibility for the compliance program," but contends that he was equally qualified because he received the same ISO 14000 certification as Socha and he was also involved in ISO 14000 compliance. (White Dep. at 81, Pl.'s Ex. 1.) Although Plaintiff has shown that he and Socha both had the same formal training and worked on ISO 14000 compliance, Plaintiff has not even alleged that he has had similar experience developing, implementing, or managing the program. Therefore, the parties are not similarly situated with respect to their involvement with ISO 14000.

Defendant next points to White's and Socha's performance reports to demonstrate the two were not similarly situated. Defendant has presented undisputed

evidence of Socha's excellent job performance. (Alphonse Dep. at 58, Pl.'s Ex. 2.) Defendant has also presented evidence that Plaintiff has received discipline for unacceptable job performance in 2003, and that Socha had to meet with Plaintiff weekly to help remedy other performance issues. (Discipline Memo., Def.'s Ex. 8; Alphonse Dep. at 74-75.) Although Plaintiff contests the basis of the 2003 discipline report, Plaintiff admits that he has had performance issues. (Pl.'s Resp. at 7.) Thus, Plaintiff has not alleged that their job performance was similar.

After reviewing the facts in a light most favorable to Plaintiff, the court concludes as a matter of law that Plaintiff and Socha are not similarly situated in all relevant respects. Socha had greater experience implementing, developing, and managing the ISO 14000 program, and performed her tasks more satisfactorily than did Plaintiff. Therefore, Plaintiff has failed to establish his prima facie case of disparate treatment under even the lower non-RIF standard.

### 2. Pretext

Even if Plaintiff had established a prima facie case of race and age discrimination in the RIF context, summary judgment would still be appropriate because Defendant has proffered legitimate nondiscriminatory reasons for Plaintiff's layoff and Plaintiff has not pointed to any convincing evidence that those reasons were a mere pretext for discrimination. Defendant claims its decision to lay off Plaintiff instead of Socha was based on Socha's greater experience with ISO 14000 and her relatively strong performance reviews. (Alphonse Dep. at 58, Pl.'s Ex. 2.) In order to defeat a motion for summary judgment once Defendant articulates its legitimate nondiscriminatory reasons, it is incumbent on Plaintiff to show that the proffered reasons were pretextual. *See*

*Godfredson v. Hess & Clark*, 173 F.3d 365, 373 (6th Cir. 1999). Plaintiff may make such a showing "by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith*, 155 F.3d at 805-06.

Plaintiff submits that Defendant's reasons for retaining Socha instead of Plaintiff were simply pretexts for discrimination. Plaintiff attempts to demonstrate pretext by arguing that his qualifications are in fact equal to or greater than Socha's. (Pl.'s Resp. at 25.) However, Plaintiff has failed to present any facts or averments to question whether Defendant's reasons "had any basis in fact." Although Defendant may have been unwise in its decision to lay off Plaintiff instead of Socha, the "soundness" of an employer's business judgment in making employment decisions is not a factor for the court to consider. *Id.* at 522 n.7 ("[C]ourts must not second guess whether the employment decision was 'wise, shrewd, or prudent.'"). The Sixth Circuit had noted: "When an employer implements a RIF, the unfortunate fact is that someone has to go. It is not the prerogative of the courts to engage in the post-hoc management of the employer's internal affairs by second-guessing how personnel could have been more equitably allotted, or cost-savings better realized." *Norbuta v. Loctite Corp.*, No. 98-4162, 2001 WL 45114, *8 (6th Cir. Jan 8, 2001). Therefore, Plaintiff's contention that he was more qualified for the position, even if true, is insufficient to show pretext.

Plaintiff also attempts to show pretext by alleging that Alphonse initially told Plaintiff he would be replaced by two black employees to cover up the fact that Plaintiff was being replaced by a younger white employee. (Pl.'s Resp. at 23.) In making this claim, Plaintiff relies on an Association Termination Report that states Plaintiff's position

would be redistributed among two other engineers.  (Associate Termination Record, Pl.'s Ex. 36.)  Alphonse stated that he had always intended for Socha to assume Plaintiff's duties, and that the Association Termination Report was not accurate.  (Alphonse Dep. at 67-70.)  The court finds as a matter of law that Defendant's erroneous Association Termination Record does not establish that Defendant's legitimate basis for retaining Socha instead of Plaintiff was a pretext for racial or age discrimination.

Not only has Plaintiff failed to establish a prima facie case of race or age discrimination, but he has also failed to present evidence that would permit a reasonable jury to conclude that Defendant's legitimate nondiscriminatory reasons were a mere pretext for racial or age discrimination.[5]  Thus, the court will grant Defendant summary judgment.

---

[5] Plaintiff also cites his salary and lack of promotional opportunities as circumstantial evidence of discrimination.  In his motion to amend, even Plaintiff recognizes that his discriminatory compensation claims are time-barred, unless through application of the relation-back doctrine.  For the reasons stated below, the court will deny Plaintiff's motion to amend his complaint to add claims of discriminatory compensation.  Similarly, any claim regarding discriminatory promotions is also time-barred because Lane and Socha's promotions occurred in 1996 and 2001, respectively, and Plaintiff filed neither a timely ELCRA claim or a timely EEOC charge.  Defendant contends that time-barred claims are not admissible as circumstantial evidence of discriminatory termination, and cites *Joliet v. Pitoniak*, 715 N.W.2d 60 (Mich. Sup. Ct. 2006) for this proposition.  Even if these claims are relevant, they are insufficient to establish circumstantial evidence of discriminatory termination.  As explained above, Plaintiff has failed to establish that there were any similarly situated employees at AAM.  Therefore, any disparity in compensation or promotional opportunities fail to establish circumstantial evidence of discrimination as a matter of law.

### III.  PLAINTIFF'S MOTION TO AMEND COMPLAINT

Also pending before the court is Plaintiff's motion to amend his complaint to add counts of racial and age discrimination in Plaintiff's compensation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Michigan Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101.  Having reviewed the briefing in this matter, the court finds that Plaintiff has failed to show that justice requires an amendment under Federal Rule of Civil Procedure 15.

#### A.  Standard

The decision whether to grant leave to amend the pleadings is governed by Federal Rule of Civil Procedure 15.  Rule 15 provides that, after a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "In the decision whether to permit an amendment, some of the factors which may be considered by the trial court are undue 'delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'"  *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (citing *Hageman v. Signal L.0P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)).

#### B.  Newly Discovered Evidence

Plaintiff filed his motion to amend one month after the close of discovery, mere days before the dispositive motion cut-off.  Nonetheless, Plaintiff argues that his delay is

excusable because his supplemental claims for discriminatory compensation are based on evidence Plaintiff unearthed during discovery in late June 2006. The court's scheduling order requires amendments to the pleadings to be based on "reasonable cause" and "if based on newly discovered information, be made promptly after receipt of the information upon which the proposed amendment is based." (03/13/06 Scheduling Order.)

However, to the extent Plaintiff has a good faith basis to pursue a claim of discriminatory compensation, he was aware of the basis for this claim far before June 2006. In his deposition Plaintiff stated that he believed he was undercompensated back in the 1990s, (White Dep. at 105-06, Pl.'s Ex. 1), and was allegedly told he was the lowest paid AAM engineer in 2002 or 2003, (*id.* at 32, 101-102). Additionally, Plaintiff filed a September 20, 2004 EEOC charge claiming Defendant discriminated against him with regard to pay. (09/20/04 EEOC Charge, Def.'s Ex. 2). Therefore, at the outset of discovery, Plaintiff could have requested information from Defendant to support Plaintiff's discriminatory compensation theory. Plaintiff does not allege that he was prevented from conducting discovery on this potential claim early in the discovery process. It appears to have been Plaintiff's choice not to depose witnesses about employee compensation until the very end of discovery.

While Plaintiff contends that his depositions of Nagbe, Novack and Socha provided him with new information upon which he could bring a discriminatory discharge claim, Plaintiff does not specify the nature of his newly discovered evidence. The only portion of Novack's deposition that relates to compensation merely reveals the

existence of People Soft, a system Defendant used to keep track of its employee's compensation. (Novack Dep. at 57-61, Pl.'s Ex. 20.) The court is unpersuaded that this information constitutes newly discovered information justifying an eleventh-hour amendment. At best, the program's existence would alert Plaintiff to the fact that Defendant had maintained records and could provide Plaintiff with information regarding employee compensation. However, Plaintiff has not shown that he reasonably doubted the existence of such records prior to the depositions, or that Defendant refused to provide this information during discovery.[6] Similarly, Plaintiff fails to either quote or even append Nagbe's deposition, and does not allege any new information from that deposition other than the existence of People Soft. (Pl.'s Mot. at ¶ 10.)

The only new information relating to compensation the court could find in Socha's deposition was the salary she received when she was promoted in 2001. Plaintiff does not demonstrate why it is significant that Plaintiff's supervisor earned almost as much as he did,[7] give any reason why it did not request Socha's compensation records at the start of discovery, and fails to contest Defendant's claim that Plaintiff caused the delay in taking Socha's deposition.[8] To the extent Plaintiff did find new evidence during discovery supporting a discriminatory discharge claim, Plaintiff's failure to do so until the

---

[6] Plaintiff does allege that Defendant refused to respond to discovery requests Plaintiff sent on the discovery cut-off date. However, the scheduling order does not require Defendant to respond under those circumstances.

[7] Plaintiff does not seek to add a claim alleging discrimination in Defendant's decision to promote Socha instead of Plaintiff.

[8] Plaintiff has chosen not to file a reply to Defendant's response to Plaintiff's motion to amend.

end of the discovery period was the result of his own delay, and is not an appropriate basis on which to bring a belated motion to amend.

### C.  Prejudice

Plaintiff contends his motion should be granted because Defendant would not be prejudiced by Plaintiff's amended complaint.  Plaintiff argues that Defendant had notice that Plaintiff would seek to assert discriminatory compensation claims, and would suffer no prejudice because the related amended claims would not require Defendant to conduct further discovery or expend substantial time in responding.

Initially, Plaintiff attempts to claim his proposed amendments simply clarify his complaint by emphasizing the discriminatory compensation claims already contained therein.  In doing so Plaintiff mischaracterizes the contents of his complaint.  While Plaintiff does reference his inadequate compensation in the factual section of his complaint, each of Plaintiff's ten counts specifically alleges that Plaintiff suffered adverse employment action *when Defendant released him from its employment*.  Therefore, the court rejects Plaintiff's contention that his amendments should be liberally granted on that basis.  To the extent Plaintiff argues lack of prejudice because the factual allegations in his complaint gave Defendant notice of his intention to amend, the court also rejects that argument.  While Plaintiff's proposed amendments are not entirely divorced from his original allegations, discriminatory compensation was not the focus of Plaintiff's original complaint and it is not reasonable to require Defendant to anticipate Plaintiff's amendment.

16

Plaintiff acknowledges that ordinarily, a party should not be permitted to amend his complaint to add additional claims after discovery is complete and the defendant has filed a motion for summary judgment. *See Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989). However, Plaintiff contends Defendant had notice of Plaintiff's intentions to amend when Plaintiff questioned Ms. Nagbe on employee compensation during her deposition and sent a "second set of discovery requests focused on this claim." (Pl.'s Mot. Br. at 14.) Ms. Nagbe's deposition was not taken until June 7, 2006, one week before the discovery was to be completed, and Plaintiff sent the discovery requests on the discovery cut-off date. Defendant argues this "in no way provided AAM with sufficient notice that Plaintiff would attempt to amend his complaint, let alone permit AAM sufficient notice to tailor its discovery to address this unasserted claim." (Def.'s Resp. at 5.) The court agrees. To the extent the deposition and discovery requests put Defendant on notice, it did not do so in time to allow Defendant to pursue its own discovery on these claims.

Plaintiff further argues that his motion to amend should be granted because allowing the amendment would not prejudice Defendant. (Pl.'s Mot. Br. at 14.) A delay that does not prejudice the opposing party is not a proper basis to deny a motion to amend. *See Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). However, in *Morse* the "amended complaint [did] not add new substantive claims," and the defendant was not prejudiced because it did not need to substantially revise its defense strategy. *Id.* at 801. While it is true that Plaintiff's amended claims are related to the

claims in Plaintiff's original complaint, Defendant's allegedly discriminatory compensation practices were not obviously an object of discovery.  Therefore, Defendant would need to conduct additional discovery and spend significant additional time to respond to Plaintiff's amendment.  *See Miller v. Admin. Office of the Courts*, 448 F.3d 887, 898 (6th Cir. 2006) (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)) ("Because the discovery deadline had already passed and the deadline for filing dispositive motions on the issue of immunity was imminent, the defendants would have been prejudiced if a further amendment had been permitted by the district court.").

The instant case may also be compared to *Wade v. Knoxville Utilities Board*, 259 F.3d 452, 459 (6th Cir. 2001).  There, the court found that "[t]he complaint did not put defendant on notice that it would have to defend claims of discrimination based on disability" when the defendant knew of Plaintiff's allegations of disability discrimination but the complaint did not include that claim.  *Id*.  Furthermore, the court agreed with the district court's determination that

> to allow the amendments proposed by plaintiff would result in significant prejudice to the defendant.  The dispositive motion deadline has already past, and defendant has filed a motion for summary judgment on all claims alleged in the original complaint.  It is also apparent that significant discovery has been completed including more than 20 depositions.  Obviously, some if not all of the depositions already taken would have to be supplemented to address the multiple issues raised in the proposed amendments and other extensive and additional discovery would have to be taken as well.

*Id.*  Here, Defendant would have to conduct additional discovery in order to defend against Plaintiff's new legal theories.  Discovery has ended; conducting additional

discovery on Plaintiff's new claims would necessarily delay trial. "At least one Sixth Circuit decision has held that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree." *Duggins*, 195 F.3d at 834 (citations omitted). Like the plaintiff in *Duggins*, Plaintiff White urges the court

> to consider the fact that the complaint already alleged the underlying factual bases for [Plaintiff's amended claims], and that therefore leave to amend should be granted under *Foeman v. Davis*, 371 U.S. 178, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962), which allows amendment under certain circumstances when the underlying factual basis of the complaint will support the amendment.

*Duggins*, 195 F.3d at 834. However, the *Duggins* Court found that the district court did not abuse its discretion in refusing to amend the complaint because of the plaintiff's undue delay and undue prejudice to the defendant. *Id*. Moreover, because the defendant in *Duggins* filed a motion for summary judgment, the Sixth Circuit also approved the district court's finding that allowing the amendment would prejudice the defendants by denying them their "anticipated 'closure.'" *Id*. Plaintiff has not provided the court with any reason to distinguish *Duggins* from the instant case.

### D.  Futility

The court also finds that allowing Plaintiff to add these additional claims would be futile, inasmuch as Plaintiff is unable to present a prima facie case. To establish a prima facie case of race and age discrimination with regard to compensation, Plaintiff must pass the similarly situated requirement. As stated above, Plaintiff has not shown Socha is similarly situated in all relevant respects. *See Ercegovich*, 154 F.3d at 352. Because Socha had more experience in ISO 14000 before she was promoted, and

19

higher-level duties than Plaintiff after she was promoted, they are not similarly situated as a matter of law, and therefore any discrepancy in income would not support a claim of discrimination.  Plaintiff has not even alleged that he is similarly situated to any other AAM engineers.  Indeed, Plaintiff himself admits his position within the company was unique.  (Pl.'s Mot. Br. at 23.)  Because Plaintiff has not shown any similarly situated AAM employee, Plaintiff cannot make out his prima facie claim and his request for an amendment to add said claim is futile.[9]  Accordingly, the court will deny Plaintiff's motion to amend in its entirety.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 22] is GRANTED, and Plaintiff's "Motion to Amend Complaint" [Dkt. #21] is DENIED.

                                                    s/Robert H. Cleland
                                                    ROBERT H. CLELAND
                                                    UNITED STATES DISTRICT JUDGE

Dated:  September 28, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 28, 2006, by electronic and/or ordinary mail.

                                                    s/Lisa G. Wagner
                                                    Case Manager and Deputy Clerk
                                                    (313) 234-5522

---

[9] Because the court will deny Plaintiff's motion to amend based on prejudice and futility, the court need not address the question whether Plaintiff's compensation claims would be time-barred had Plaintiff been allowed to amend.

S:\Cleland\JUDGE'S DESK\C1 ORDERS\05-72741.WHITE.OrderGrantSummJ&DenyAmend.wpd